## SHANE v. CITY OF NEW YORK.

(Supreme Court, Appellate Term.    May 7, 1909.)

1. MUNICIPAL CORPORATIONS (§ 220*)—CIVIL SERVICE EMPLOYÉS—SUSPENSION
    —EVIDENCE.
        Evidence *held* to show that, when a city civil service employé was
    suspended, there was neither lack of appropriation applicable to the work
    in which he was engaged nor lack of work to be done in his department.
        [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
    220.*]

2. MUNICIPAL CORPORATIONS (§ 220*)—CIVIL SERVICE EMPLOYÉS—COMPENSA-
    TION.
        A city civil service employé is within the class of public servants whose
    salaries are incidents to the positions held by them; and where he was
    "laid off" while there was sufficient appropriation applicable to his work,
    and no one was appointed to his place, nor his position abolished, he was
    entitled to his salary, notwithstanding he obtained other work.
        [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
    605; Dec. Dig. § 220.*]

3. MUNICIPAL CORPORATIONS (§ 220*)—CIVIL SERVICE EMPLOYÉS—ACTION FOR
    SALARY—NECESSITY FOR CERTIFICATE OF PAY ROLL.
        In an action by the employé for his salary during the time he was
    suspended, where his appointment, position, and suspension were admit-
    ted, a certificate of pay roll by the borough president or by the civil
    service commission was not necessary; the purpose of such a certificate
    being only to prevent a disbursing officer from paying, except upon cer-
    tificate showing work performed.
        [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
    220.*]

4. MUNICIPAL CORPORATIONS (§ 220*)—CIVIL SERVICE EMPLOYÉS—ACTION FOR
    SALARY DURING SUSPENSION—NECESSITY FOR FIRST OBTAINING REINSTATE-
    MENT.
        The employé having been simply "laid off," and not removed, it was
    not essential to recovery of compensation that he first obtain his "re-
    instatement" by certiorari or mandamus.
        [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
    220.*]

Appeal from Municipal Court, Borough of Manhattan, Seventh
District.

Action by Bernard Shane against the City of New York. Judgment
of dismissal, and plaintiff appeals. Reversed and rendered.

Argued before GILDERSLEEVE, P. J., and DAYTON and
GOFF, JJ.

Louis E. Felix, for appellant.

Francis K. Pendleton (Theodore Connoly, John F. O'Brien, and
Frank E. Smith, of counsel), for respondent.

DAYTON, J. Plaintiff was on July 24, 1905, duly appointed in the
classified civil service a transitman and computer in the office of the
president of the borough of Richmond at a salary of $1,350, subse-
quently increased to $1,500, per annum. On February 14, 1908, he
received from the president of that borough a communication stating

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that he (plaintiff) was laid off from March 1, 1908, for lack of appropriation. On February 29, 1908, he received a rescission .of said action, and on the same day he received another communication from said president, as follows:

"I beg to inform you of your lay-off for 'lack of work' as transitman, bureau of engineering topography of this office, to take effect March 1, 1908."

On February 29, 1908, said president addressed two communications to the municipal civil service commission—one rescinding plaintiff's lay-off (February 14, 1908). for lack of appropriation, and the other that plaintiff was laid off for "lack of work," to take effect March 1, 1908. Plaintiff continued to tender his services to said president, which were refused. He subsequently obtained other employment, and brought this action, on the ground of his wrongful discharge, to recover his salary from March 1 to June 18, 1908, $437.50.

No charges were preferred against the plaintiff, nor is it suggested that he was in any way incompetent for the performance of his duties. The defense was that plaintiff's employment was rendered unnecessary and abolished; that he was lawfully suspended without pay; that he brought no proceeding for his reinstatement; that pursuant to section 1543 of the Greater New York Charter (Laws 1901, p. 636, c. 466) the municipal civil service commission was duly notified of such suspension, whereby plaintiff was certified for appointment, and acquiesced in said action by receiving an appointment, as draughtsman in the bureau of sewers, borough of Manhattan.

The learned trial justice, in a memorandum decision, held as follows:

"If the plaintiff were removed, he could only be removed after notice. There is no pretense that he was so removed. * * * While I think the plaintiff has a claim against the city, based upon his appointment and offer to do the work required of him, still I think he cannot recover· at this time in this action."

Thereupon the complaint was dismissed on the ground that the borough president had not been required to certify plaintiff's name on the pay roll and the civil service commission required to attach their certificate to such pay roll. No question was raised as to the regularity of plaintiff's appointment. The finally adopted reason or ground for his discharge was "lack of work"; it being patent that "lack of appropriation" would not stand scrutiny. Investigation of the record demonstrates that "lack of work" is equally untenable. Mr. Tuttle, principal assistant engineer of the borough president, testified as follows:

"Q. Was there a lack of work in that department in the latter part of February, 1908? A. I think there was. Q. You are not sure about it? A. I am not positive about it."

Mr. Tribus, the consulting engineer in charge of the bureau of engineering, who ordered plaintiff's suspension, testified as follows:

"Q. You found there was a mistake in the laying off for lack of appropriation? A. Yes, sir. Q. And that you corrected to laying off for lack of work? A. Yes, sir."

He proceeded to say:

"The whole financial situation of the city during December, January, and February was uncertain. We were starting on a very important piece of work. We received for that work appropriations in the shape of corporate stock or bond issues not limited to any specific 12 months. We didn't know when the second installment of that corporate stock was authorized, whether we would ever get any more, * * * and therefore we deemed it advisable as a matter of policy to cut down the work, the amount of work done, and therefore we deemed it proper to lay off some men, and Mr. Shane was one of the men to be laid off for contemplated lack of work after the first of March. * * * Q. Was there sufficient work to be done in that bureau or department for these transitmen and computers, if you had permitted it to be done? A. As I understood the needs at that time, there was not sufficient of the kind Mr. Shane was doing. Q. From your own personal knowledge? A. I had no personal knowledge as to that principal feature. Q. I understood you to say that you were afraid that there would not be enough money to pay for the work to be carried on unless there was a temporary reduction in the force, and that business policy dictated you that a reduction in the force would be the best means out of the situation? A. Yes; that is correct."

He further testified, however, that on February 4, 1908, an appropriation for $90,000 for the bureau had been approved, and that the pay roll was $11,000 per month. Mr. Cromwell, the borough president, testified that in the earlier part of the year the bureau had an appropriation of $75,000, followed by that of February of $90,000, making a total of $165,000.

"Q. Why did you want that appropriation of $90,000 at that time? A. To enable us to do as much work as possible. Q. There is quite a lot of public development going on in the borough of Richmond? A. Yes, sir. Q. Necessitating this particular class of work? A. Yes, sir; topographical work is the foundation of the department. Q. As matter of fact there was enough work to put this man on, only it would have eaten up the appropriation? A. It would have been bad policy. Q. So that, when you suspended him for lack of work, you only meant to suspend him for lack of appropriation for work that might be done in the future? A. No; we felt there was not sufficient work to warrant a further expenditure. Q. He could have been put to work at that time? A. He could have. Q. Subsequent to March 1, 1908, you increased the force of the topographical bureau? A. I don't recollect. Q. As near as you can remember, were there additional men put to work there doing the same class of work this plaintiff was doing, the same kind of work? A. I don't know. There may have been appointments made filling vacancies that occurred later on. There are constant changes in the office."

It is manifest that, when plaintiff was suspended, there was neither lack of appropriation nor lack of work. The president of a borough applies for and obtains appropriations for specific expenditures. His duty is to disburse them carefully and honestly upon the work for which they are granted. Section 383, Revised Greater New York Charter, as amended, provides that the president of a borough of the city—

"shall have power to appoint a secretary, and such assistants, clerks and subordinates as he may deem necessary, if provision be made therefor by the board of estimate and apportionment and the board of aldermen. The said secretary, assistants, clerks and subordinates, shall hold office at the pleasure of the president, subject to the provision of the civil service laws."

It would seem that a borough president may not discharge, lay off, or suspend capable classified civil service employés while there is work for them to do within his appropriation, because of his (perhaps base-

less) apprehension that in a succeeding period the city may be financially unable to make further appropriations for continuing the work which is "the foundation of the department." The plaintiff was within that class of public servants whose salary was an incident to the position held by him. No one was appointed in his place, nor was his position abolished. There being sufficient appropriation applicable to the work on which he was engaged, plaintiff was unlawfully "laid off" —suspended—and is entitled to the salary claimed, notwithstanding he subsequently obtained other work.

No certificate of pay roll by the borough president nor by the civil service commission was necessary, for the reason that plaintiff's appointment, position, and suspension are admitted, and as such statutory certificate is for the purpose of preventing a disbursing officer from paying, except upon a certificate showing work performed, an application for it by plaintiff, he having been deprived of doing work, would have been a manifestly idle ceremony. The cases on this point cited by the learned trial judge present wholly different facts.

No authority is cited by the city for its contention that plaintiff, on the facts here shown, may not recover without first obtaining his "reinstatement" by certiorari or mandamus. He was "laid off," not removed. His record is free from charges of any kind. The title to his position is unchallenged, and therefore no proceeding was required.

The judgment should be reversed, and judgment rendered for the plaintiff for the amount, with interest, as demanded, with costs in this court and in the court below. All concur.